UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARVIN H.,[1]

                              Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

**DECISION & ORDER**

20-CV-0838MWP

## PRELIMINARY STATEMENT

Plaintiff Marvin H. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 12).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 11, 14). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

### I.   Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1)   whether the claimant is currently engaged in substantial gainful activity;

(2)   if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3)   if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

> (4)    if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and
>
> (5)    if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.    <u>Procedural History</u>

Plaintiff filed an application for benefits alleging a disability onset date of December 11, 2015.  (Tr. 186).[2]  That application was denied by ALJ Sharon Seeley on May 31, 2017 (the "2017 Decision").  (Tr. 22-33).  On appeal, the Hon. William M. Skretny, United States District Judge for the Western District of New York, issued a Decision and Order (the "District Court Decision") remanding the matter on the grounds that the 2017 Decision was not supported by substantial evidence, and a judgment remanding the action was issued on October 2, 2019.  (Tr. 625-34).  In the District Court Decision, Judge Skretny determined that ALJ Seeley erred by (1) disregarding the 100% disability determination rendered by the Department of Veterans Affairs (the "VA"), and the medical evidence upon which it was based, including the medical opinion rendered by VA staff psychologist Hillary Tzetzo, Ph.D.; (2) improperly substituting her own judgment in place of the limitations assessed in a medical opinion provided

---

[2]  The administrative transcript (Docket ## 8-9) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

4

by state consulting examiner Janine Ippolito, Psy.D.; and, (3) erroneously reading portions of the record.  (*Id.*).

On October 28, 2019, the Appeals Council entered an order remanding the case to the ALJ and directing the ALJ to conduct further proceedings consistent with the District Court Decision.  (Tr. 635-38).  On March 11, 2020, ALJ Stephan Bell concluded that plaintiff was not disabled (the "2020 Decision").  (Tr. 544-60).  Plaintiff commenced this lawsuit on July 6, 2020. (Docket # 1).

### III.    The 2020 Decision

In the 2020 Decision, ALJ Bell followed the required five-step analysis for evaluating disability claims.  Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity between the alleged onset date of December 11, 2015, and June 30, 2016, his date last insured.  (Tr. 544-60).  At step two, the ALJ concluded that plaintiff had the following severe impairments: post-traumatic stress disorder ("PTSD"); depressive disorder; traumatic brain injury; cannabis use disorder; chronic headaches; and, migraines.  (*Id.*). At step three, the ALJ found that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings.  (*Id.*).

The ALJ concluded that plaintiff retained the RFC to perform a full range of work at all exertional levels but was limited to simple routine tasks and simple work-related decisions, could only occasionally interact with supervisors or coworkers, and could never interact with the public.  (*Id.*).  At steps four and five, the ALJ found that plaintiff was unable to perform any past relevant work, but that other jobs existed in significant numbers in the national economy that, based on his age, education, work experience, and RFC, plaintiff could perform, such as

housekeeping cleaner, silver wrapper, and marker II.  (*Id.*).  Accordingly, the ALJ found that plaintiff was not disabled.  (*Id.*).

## IV.   <u>Plaintiff's Contentions</u>

Plaintiff contends that ALJ Bell's determination that he was not disabled is not supported by substantial evidence and is the product of legal error.  (Docket ## 11-1; 15). According to plaintiff, the ALJ's determination failed to comply with the District Court Decision because the ALJ failed to correct the identified errors in evaluating the medical opinions contained in the record.  (*Id.*).  First, plaintiff maintains that the ALJ improperly accorded the VA disability rating "little weight," in contravention of the district court's instruction that the rating should be given "some weight."  (Docket ## 11-1 at 18-19; 15 at 3-4).  Next, he challenges the ALJ's evaluation of Tzetzo's opinion, contending that the ALJ did not adequately explain his reasons for according it the weight he did, in contravention of the District Court Decision.  (Docket ## 11-1 at 18-20; 15 at 3-4).  Finally, he challenges the ALJ's evaluation of Ippolito's opinion on the grounds that the ALJ improperly relied upon plaintiff's activities of daily living, despite the district court's conclusion that those activities presented an insufficient basis upon which to discount the opinion.  (Docket ## 11-1 at 20-24; 15 at 4-7).  Plaintiff also contends that the ALJ improperly rejected only the most restrictive portions of Ippolito's opinion and improperly accorded greater weight to non-examining agency medical consultant D. Bruno, Psy.D.  (Docket # 11-1 at 22-24).

V.      **Analysis**

Relevant regulations provide that on remand "[t]he administrative law judge *shall* take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."  20 C.F.R. § 404.977(b) (emphasis supplied).  "The ALJ's failure to abide by the directives in an Appeals Council remand order constitutes legal error requiring remand."  *Parks v. Colvin*, 2017 WL 279558, *3 (W.D.N.Y. 2017); *see also Daumen v. Berryhill*, 2018 WL 6380385, *5 (W.D.N.Y. 2018) ("[i]f an ALJ fails to comply with an Appeals Council remand order, [his or her] decision is subject to judicial review and can form the basis for a remand to the Commissioner"); *Scott v. Barnhart*, 592 F. Supp. 2d 360, 371 (W.D.N.Y. 2009) ("[t]he ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand").

A.      **ALJ Bell Properly Evaluated Tzetzo's Opinion and the VA Disability Rating**

At the VA's request, Tzetzo conducted a compensation and pension examination ("C&P examination") of plaintiff on March 23, 2016.[3]  (Tr. 422-35).  Tzetzo noted that plaintiff, who was serving as a gunner in the military, had been stationed in Iraq in 2005 when his Humvee was hit by an enemy IED, causing a traumatic brain injury ("TBI").  (*Id.*).  At the time of Tzetzo's evaluation, plaintiff was already rated as 70% disabled due to PTSD and 10% disabled due to TBI.  (*Id.*).

Tzetzo reported that plaintiff's PTSD caused him to experience anger and anxiety and his TBI caused memory problems and headaches.  (*Id.*).  Tzetzo administered the MoCA cognitive screening test, and plaintiff scored twenty-two out of a possible thirty points, a decline

---

[3]  Tzetzo also conducted C&P examinations of plaintiff on October 22, 2012, and September 22, 2008, and psychologist Karen Klementowski conducted a C&P examination of plaintiff on April 14, 2014.  (Tr. 424, 972-89, 1081-1091).

of approximately five points from his score in October 2012. (*Id.*). Based upon the decline, Tzetzo opined that plaintiff appeared to suffer from ongoing cognitive decline characterized by increased memory difficulties. (*Id.*). According to Tzetzo, plaintiff demonstrated normal judgment, motor activity, and visual spatial orientation, routinely appropriate social interaction, an absence of neurobehavioral effects, and full orientation. (*Id.*). Tzetzo reported that the objective testing evidence demonstrated that plaintiff had mild impairment of memory, attention, concentration, and executive functions, resulting in mild functional impairment. (*Id.*). Considering plaintiff's mental health, Tzetzo opined that plaintiff had total occupational and social impairment. (*Id.*). According to Tzetzo, he estimated that approximately 85% of plaintiff's mental health symptoms were attributable to his PTSD, while approximately 15% were attributable to TBI residuals. (*Id.*). On April 20, 2016, the VA issued a decision increasing plaintiff's disability rating to 100% for PTSD and 40% for TBI, resulting in a finding of individual unemployability. (Tr. 260).

### 1.   <u>Evaluation of Tzetzo's Opinion</u>

In the original 2017 Decision, ALJ Seeley gave Tzetzo's opinion little weight on the basis that plaintiff's statements to Tzetzo concerning his symptoms and limitations were not consistent with the record evidence and were contradicted by statements he had made to other providers. (Tr. 31). Specifically, she concluded:

> I give little weight to the evaluation and opinion of [Tzetzo] because the symptoms and limitations reported by the claimant to Dr. Tzetzo are not consistent with other evidence in the record, including the treatment history, the results of mental status examinations, and the claimant's activities of daily living. Moreover, statements made by the claimant to Dr. Tzetzo are contradicted by other statements [plaintiff] made outside the context of his application for VA disability benefits. As noted above, the claimant reported to Dr. Tzetzo that he could not enjoy any of the family cruise he took in 2015 because he "felt like

> everyone was looking at" him . . . , but reported to counselor Scott
> Jordan in January 2016 that his family's love and support on the
> cruise had helped him and a male cousin provided him an image of
> a successful black male that gave him hope.

(*Id.*).

In its review of the 2017 Decision, the district court noted that Tzetzo had

administered the MoCA test and determined that plaintiff appeared to have experienced a

"deterioration in functioning between October 2012 and March 2016," and the court found that

Tzetzo's opinion was relevant and authored by a physician who personally examined the

plaintiff. (Tr. 631). Regarding ALJ Seeley's basis for discounting the opinion, the district court

stated:

> [T]he ALJ gave "limited weight" to Dr. Tzetzo's evaluation
> because it was "not consistent with other evidence in the record,
> including the treatment history, the results of mental status
> examinations, and [plaintiff's] activities of daily living." . . . Given
> the relevance of Dr. Tzetzo's evaluation to the VA disability
> determination and to an assessment of [p]laintiff's functioning
> during the relevant period, it was error to thus discount it.

(*Id.*). With respect to the only specific example of inconsistency identified by ALJ Seeley – that

plaintiff reported to Tzetzo that he was unable to enjoy a family vacation but reported otherwise

to his counselor – the district court determined that the two reports in fact related to two different

events and were not inconsistent. (Tr. 632). The district court thus held that ALJ Seeley's

determination to discount Tzetzo's opinion was not supported by substantial evidence to the

extent that the ALJ relied on that purported inconsistency in doing so. (Tr. 632-33).

In the 2020 Decision, before weighing the opinion evidence, ALJ Bell reviewed

and summarized some of plaintiff's mental health treatment records, including an April 2014

evaluation by Karen Klementowski, Ph.D., two counseling sessions that plaintiff attended with

Scott Jordan, LCSWR, during the relevant period, which occurred in January and March 2016,

Tzetzo's March 2016 evaluation, and three additional mental health treatment appointments with Maria Saleh, LCSW-R, that postdate plaintiff's last insured date.[4]  (Tr. 548, 551-53).  ALJ Bell concluded that these records demonstrated that plaintiff suffered no more than "moderate clinical abnormalities" prior to his date last insured.  (Tr. 551).  ALJ Bell also noted that Klementowski opined in April 2014 that plaintiff had a moderate level of occupational impairment due to his PTSD symptoms, even though he had reported to Klementowski that he spent his days taking care of his three-month-old daughter, watching television, cleaning, and left his house daily to run errands.  (Tr. 552 (citing Tr. 298)).

ALJ Bell reviewed Jordan's treatment notes from January and March 2016, which suggested that plaintiff had discontinued mental health treatment sessions with Jordan in 2013 and had not sought mental health counseling again until January 2016.  (Tr. 552-53 (citing Tr. 352-53)).  The ALJ noted that Jordan's mental status examinations of plaintiff at these appointments were essentially normal, although plaintiff's affect was dysphoric, and he complained of depression stemming from his breakup with the mother of his child.  (*Id.*).  The ALJ also noted Tzetzo's report from March 2016, in which he opined that plaintiff demonstrated only mild impairments of memory, attention, concentration, and executive functioning.  (Tr. 552 (citing Tr. 273, 430)).

As for evidence postdating the date last insured, ALJ Bell concluded that it did not document any worsening of plaintiff's condition.  (Tr. 553).  According to ALJ Bell, treatment notes from a counseling session with Saleh in September 2016 demonstrated

---

[4]  The record suggests that plaintiff previously attended counseling sessions with Jordan between 2008 and 2013.  (Tr. 446).  It does not appear that plaintiff received ongoing mental health treatment between 2013 and early 2016, when he re-engaged in counseling with Jordan.  (*Id.*).  After meeting with Jordan in January and March and after his VA disability rating was increased to 100%, plaintiff missed several scheduled appointments with Jordan, as well as scheduled consultations with a psychologist.  (Tr. 421-22).  The record suggests that plaintiff engaged in more consistent mental health treatment beginning in the fall of 2016, after his date last insured.  (Tr. 503-504, 526-40, 1208-93, 1369-1794).

essentially normal findings, including an absence of any evidence of dysfunctional or deteriorated cognitive function or memory deficits.  (Tr. 553 (citing Tr. 504)).  ALJ Bell also discussed plaintiff's follow-up appointments with Saleh in December 2016 and January 2017, which presented similar objective findings.[5]  (Tr. 553 (citing Tr. 527, 539).

Regarding Tzetzo's opinion that plaintiff has "total occupational and social impairment," ALJ Bell gave it "little weight," finding that the opinion was vague and inconsistent with plaintiff's mental health treatment records, specifically his appointments with Jordan and Saleh, which documented essentially normal findings on mental status examinations. (Tr. 557).  Plaintiff contends that ALJ Bell's weighing of Tzetzo's opinion failed to comply with the District Court Decision because his analysis was even more cursory than ALJ Seeley's, which the district court found insufficient.  (Docket ## 11-1 at 19-20; 15 at 3-4).  I disagree.

As an initial matter, I find that ALJ Bell cured the deficiencies in ALJ Seeley's decision that were identified by the district court.  In contrast to the 2017 Decision, ALJ Bell did not discount Tzetzo's opinion based upon a misreading of the record concerning plaintiff's reports of his family vacations.  (*Compare* Tr. 557 *with* Tr. 632).  Additionally, the 2017 Decision discounted Tzetzo's opinion by conclusorily stating that it was inconsistent with the

---

[5]  Plaintiff suggests that ALJ Bell improperly relied on treatment notes from late 2016 and January 2017, but inexplicably ignored treatment notes from a speech therapy consultation he attended in March 2017 demonstrating abnormal findings.  (Docket # 11-1 at 20).  According to plaintiff, those records demonstrated that plaintiff had "word finding difficulties, trouble following [the] course of conversation when topic[s] changed[] and recalling information."  (*Id.*).  To the contrary, those difficulties were difficulties that he reported to the consultant. (Tr. 1879).  Objective testing during the consultation demonstrated impairment essentially in the average range, with the exception of moderate impairment in attention and judgment and moderate to severe impairment in memory recall.  (*Id.*).  The consultant concluded that plaintiff demonstrated a moderate cognitive impairment with deficits in the areas of attention, memory, and judgment, but concluded that his prognosis for improvement was good. (Tr. 1880).  Plaintiff also suggests that the ALJ erred by failing to mention that plaintiff attended a PTSD program in Batavia following his date last insured.  (Docket # 11-1 at 20).  Although plaintiff was accepted into the program, he left the program, failed to return, and was discharged.  (Tr. 1467-68).  In any event, an ALJ is "not require[d] . . . [to] mention[ ] every item of testimony presented to him or . . . explain[ ] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

record as a whole – reasoning that courts have repeatedly found insufficient to permit meaningful review.  *See Olczak v. Comm'r of Soc. Sec.*, 2019 WL 3891579, *4 (W.D.N.Y. 2019) ("[s]imply stating that the opinion 'is not supported by substantial medical evidence' without any explanation or analysis prevents meaningful review") (collecting cases); *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594, *2 (N.D.N.Y. 2014) ("this . . . conclusory statement about the treatment record fails to fulfill the heightened duty of explanation"); *Crossman v. Astrue*, 783 F. Supp. 2d 300, 308 (D. Conn. 2010) (ALJ's statement that treating physician's opinion was "inconsistent with the evidence and record as a whole" is "simply not the 'overwhelmingly compelling type of critique that would permit the Commissioner to overcome an otherwise valid medical opinion'") (quoting *Velazquez v. Barnhart*, 2004 WL 367614, *10 (D. Conn. 2004)).  By contrast, ALJ Bell identified and discussed specific record evidence and the grounds upon which he concluded that such evidence was inconsistent with Tzetzo's conclusion.  His decision, unlike the 2017 Decision, permits meaningful judicial review.

Moreover, review of the 2020 Decision as a whole demonstrates that ALJ Bell provided a sufficient basis upon which to discount Tzetzo's opinion that plaintiff suffered total occupational and societal impairment and that his determination to do so was supported by substantial evidence.  Although Tzetzo conducted testing that he concluded demonstrated plaintiff's cognitive decline since 2012, as ALJ Bell noted, Tzetzo also concluded that plaintiff only demonstrated a mild impairment of memory, attention, concentration and executive functioning, resulting in mild functional impairment.  (Tr. 552 (citing Tr. 430)).  ALJ Bell also noted that other record evidence likewise demonstrated at most moderate abnormalities. (Tr. 551).  Such evidence included mental status examinations conducted by Jordan and Saleh, which demonstrated dysphoric affect and depression, but an absence of evidence of

dysfunctional or deteriorated cognitive function or memory deficits.  (Tr. 552-53).  On this record, I find that the ALJ did not commit error by discounting Tzetzo's opinion for the reasons he stated.  *See Anzola v. Berryhill*, 2019 WL 10630956, *17 (S.D.N.Y. 2019) (ALJ properly discounted medical opinion based upon inconsistency with mental status examinations contained in treatment notes), *report and recommendation adopted by*, 2020 WL 5646329 (S.D.N.Y. 2020); *Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 282 (W.D.N.Y. 2018) ("[t]he [c]ourt has reviewed the opinion evidence offered by [the social worker], and finds that the ALJ's weighing of her opinion was proper, particularly in light of [the social worker's] normal mental status examinations, and because her opinion was not entitled to controlling weight"); *Wallace v. Berryhill*, 2017 WL 9534743, *17 (S.D.N.Y.) ("[p]laintiff's normal mental status examination results[] is a valid basis for discounting a treating source opinion"), *reported and recommendation adopted by*, 2017 WL 4011494 (S.D.N.Y.), *appeal dismissed*, 17-2983 (2d Cir. 2017).

## 2.    Evaluation of the VA Disability Rating

In the 2017 Decision, ALJ Seeley gave "no weight" to the VA disability rating on the grounds that the standards used by the VA are not the same as those used to evaluate DIB applications.  (Tr. 31).  The district court determined that ALJ Seeley's assessment of the VA disability rating was improper and required remand.  (Tr. 625-34).  Specifically, the district court concluded that the ALJ's failure to give any weight to the VA disability rating was inconsistent with Second Circuit authority requiring that such determinations be considered and given at least some weight.  (Tr. 630).

In the 2020 Decision, ALJ Bell gave the rating "little weight," finding that it was not particularly persuasive.  (Tr. 556).  Like ALJ Seeley, ALJ Bell noted in the 2020 Decision

that the VA rating was based upon different standards than those used to evaluate DIB claims. (*Id.*).  He also acknowledged that the ultimate determination of whether the plaintiff was unable to return to work was reserved for the Commissioner.  (*Id.*).  Significantly, ALJ Bell considered treatment notes contained in the record and discussed at length throughout the opinion, and concluded that they were inconsistent with the conclusion that plaintiff was unable to work. (*Id.*).

Plaintiff maintains that ALJ Bell's conclusion that the VA rating was entitled to "little weight" contravenes the District Court Decision that the rating be given "some weight." (Docket ## 11-1 at 18-19; 15 at 3-4).  I disagree.  Simply stated, plaintiff's argument misconstrues the decision to require that the ALJ on remand assign a particular weight – specifically "some weight" – to the VA rating.  To the contrary, the district court held that ALJ Seeley's rejection of the VA rating solely on the grounds that it was based upon different standards contradicted Second Circuit authority.  (Tr. 630).  Accordingly, the district court remanded the matter to permit the Commissioner to apply the correct legal standard.[6]  *See Paul G. v. Saul*, 2020 WL 9848451, *11 (N.D.N.Y. 2020) ("[i]n the Second Circuit, a determination made by another governmental agency that a social security claimant is disabled is entitled to some weight and should be considered, even though that determination is not binding[;] . . . [d]espite this limited approach, however, the Commissioner is not generally free to completely disregard a VA disability rating") (internal quotations and alterations omitted).

---

[6]  Additionally, the district court found that ALJ Seeley's reasoning was inconsistent to the extent that the ALJ found that plaintiff's medical records post-dating the date last insured were "not significantly relevant to a finding of disability," but relied upon some records after the date last insured in evaluating the opinion evidence. (Tr. 630-31 (citing Tr. 28)).  ALJ Bell's decision, by contrast, does not indicate that those records were being disregarded due to temporal irrelevance, nor does it reflect the same inconsistent treatment of records subsequent to plaintiff's date last insured.

14

ALJ Bell's 2020 Decision, in addition to noting the differing standards, found that the 100% disability VA rating was inconsistent with plaintiff's treatment records, the substance of which he discussed at length throughout the decision.  In other words,  ALJ Bell did consider the VA rating, but determined that it was not persuasive and accorded it little weight.  (*Id.*).  The ALJ's approach was consistent with applicable legal standards and did not violate the District Court Decision, and his determination to discount the VA disability rating was supported by substantial evidence.  *Bryan L. v. Comm'r of Soc. Sec.*, 2021 WL 3726101, *3 (W.D.N.Y. 2021) ("[i]t is apparent from the ALJ's decision that the ALJ considered the VA findings and gave clear reasons for the conclusion that such findings were entitled to little weight"); *Heather R. v. Comm'r of Soc. Sec.*, 2021 WL 37522, *5 (W.D.N.Y. 2021) (ALJ appropriately considered and assigned little weight to the VA disability determination where the ALJ found, *inter alia*, that the VA determination did not provide a functional assessment and the opinions were not consistent with the contemporaneous treatment records).

 **B.**  <u>The ALJ Properly Evaluated Ippolito's Opinion</u>

   I turn next to plaintiff's challenge to ALJ Bell's assessment of Ippolito's opinion, which was rendered following her psychiatric evaluation of plaintiff on June 21, 2016. (Tr. 476-80).  At that time, plaintiff reported that he was able to care for his personal hygiene, drive, cook, care for his two-year-old daughter, and grocery shop, although his mother and brother did his household cleaning and laundry.  (*Id.*).  Plaintiff reported that he spent his days caring for his dog, driving his sisters to school or work, and attending appointments as needed. (*Id.*).

   On mental status examination, plaintiff's dress was mildly disheveled, and his motor behavior was lethargic, but his personal hygiene was adequate, and he exhibited normal

posture and appropriate eye contact.  His speech was fluent and clear, and his thought process was coherent and goal-directed.  (*Id.*).  Plaintiff's affect was dysphoric, and his mood was dysthymic, although he was oriented and his sensorium was clear.  (*Id.*).  According to Ippolito, plaintiff had intact attention and concentration, impaired memory, average cognitive functioning, and good insight and judgment.  (*Id.*).

In her medical source statement, Ippolito found "no evidence of limitations" in plaintiff's ability to follow and understand simple directions and instructions, perform simple and complex tasks independently, maintain a regular schedule, learn new tasks, and make appropriate decisions.  (*Id.*).  Ippolito opined that plaintiff was moderately limited in maintaining attention and concentration and markedly limited in relating adequately with others and appropriately dealing with stress.  (*Id.*).

In the 2017 Decision, ALJ Seeley gave Ippolito's opinion "limited weight" because it was based upon a single examination during which the plaintiff was not honest with Ippolito concerning his past use of cannabis.  (Tr. 30).  ALJ Seeley also found that the stress and social limitations assessed by Ippolito were inconsistent with the plaintiff's daily activities, which included traveling with his family, providing care to his daughter for extended periods, driving, and shopping in public.  (Tr. 30-31).

The district court concluded that ALJ Seeley improperly substituted her own lay opinion by determining that plaintiff's activities of daily living contradicted Ippolito's medical findings.  (Tr. 632).  According to the district court, the fact that plaintiff was able to shop and vacation with his family was an insufficient basis upon which to discount Ippolito's assessed stress and social interaction limitations.  (*Id.*).

16

In the 2020 Decision, ALJ Bell determined to give Ippolito's opinion "limited weight" for a variety of reasons.  Like ALJ Seeley, ALJ Bell noted that it was based upon a single examination in which plaintiff was dishonest concerning his cannabis use and the limitations assessed in it were inconsistent with plaintiff's daily activities, including traveling in public, visiting family out of town, caring for his young daughter, and grocery shopping. (Tr. 556).  ALJ Bell also found that the assessed limitations were inconsistent with plaintiff's treatment notes, which were discussed at length throughout the ALJ's opinion, and which generally documented normal findings on mental status examinations.  (*Id.* (citing Tr. 527, 539)). ALJ Bell further found that the opinion of state agency reviewer Dr. Bruno that plaintiff suffered only from moderate mental limitations was more consistent with the record, including the treatment history and notes and plaintiff's reported activities of daily living.  (*Id.*).  ALJ Bell explained that the treatment notes demonstrated moderate limitations in dealing with stress and interacting with others and that he would give plaintiff "the benefit of the doubt" by excluding him from interactions with the public.  (*Id.*).

Plaintiff maintains that the ALJ failed to correct a deficiency identified in the District Court Decision because ALJ Bell continued to rely on plaintiff's activities of daily living in discounting the limitations assessed by Ippolito.  (Docket ## 11-1 at 20-24; 15 at 4-7). Plaintiff also maintains that the ALJ improperly discounted the opinion based upon plaintiff's lack of candor concerning his marijuana use and that the ALJ improperly supported his RFC assessment based solely upon Bruno's opinion, which is insufficient to constitute substantial evidence.  I disagree.

Plaintiff's primary challenge – that ALJ Bell improperly relied upon plaintiff's activities of daily living – is directly belied by the record.  In his decision, ALJ Bell clearly

17

identified the mental status examinations contained in plaintiff's treatment notes, in addition to

plaintiff's activities of daily living, as a basis for discounting Ippolito's opinion.  (Tr. 556).  As

discussed *supra*, those treatment notes documented essentially normal mental status upon

observation.  To the extent that plaintiff maintains that the ALJ was not permitted to give any

consideration to his activities of daily living when weighing the opinion evidence, such

contention is unsupported by caselaw.  *See Georgiana W. v. Comm'r of Soc. Sec.*, 2021 WL

2809553, *10 (W.D.N.Y. 2021) ("it was not improper for the ALJ to consider plaintiff's reported

ability to engage in the activities of daily living recounted above when weighing the opinion

evidence") (collecting cases).

   Plaintiff also suggests that it was improper for ALJ Bell to consider plaintiff's

failure to disclose to Ippolito his past chronic use of marijuana.  (Docket ## 11-1 at 22; 15 at

5-6).  According to plaintiff, his treatment records suggest that he lacked insight into his use of

marijuana and his lack of insight likely explains his failure to be entirely forthcoming concerning

his drug use.  (Docket ## 11-1 at 22; 15 at 5-6).  As an initial matter, it is far from clear that

plaintiff's treatment records document that he lacked insight into his marijuana use, rather than

that his continued marijuana use evidenced his decreased insight.  (*See* Tr. 436, 447).  In any

event, irrespective of whether plaintiff's failure to explain his past marijuana use was purposeful,

the ALJ was permitted to consider that Ippolito lacked this information in evaluating her opinion.

   In addition, I reject any suggestion that the ALJ's determination to reject

Ippolito's stress and social interaction-related limitations constituted improper "cherry-picking."

(Docket # 11-1 at 20, 22).  Rather, "the record demonstrates that [ALJ Bell] carefully reviewed

the entire record . . . and declined to adopt those [limitations] that were unsupported."  *See*

*Cosme v. Colvin*, 2016 WL 4154280, *12 (W.D.N.Y. 2016) (rejecting argument that the ALJ

inappropriately adopted only those limitations that supported his ultimate finding where the decision demonstrated that the ALJ carefully considered conflicting evidence and provided the basis for his decision to adopt only portions of medical opinion).

I also disagree with plaintiff's contention that the ALJ erred by relying solely upon Bruno's opinion to support his RFC assessment.  (Docket # 11-1 at 23-24).  Under certain circumstances, a non-examining physician opinion may be entitled to more weight than the opinion of an examining physician, such as where the opinion of a treating or examining physician is contradicted by substantial evidence in the record.  *O'Grady v. Astrue*, 2012 WL 3727220, *19 (D. Conn. 2012) ("[w]here the opinion of the treating physician is inconsistent with other substantial evidence in the record and, therefore, not entitled to controlling weight, an opinion of a non-examining doctor that is consistent with substantial evidence in the record may be afforded controlling weight"); *Cyr v. Astrue*, 2011 WL 3652493, *11 (D. Conn. 2011) ("if the treating physician's opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts, it is not entitled to controlling weight[;] . . . [i]n this case, [the treating physician's] opinion is contradicted by substantial evidence in the record, which means that the opinion of a non-examining DDS doctor can be entitled to controlling weight").

In any event, ALJ Bell's decision makes clear that, in addition to Bruno's opinion, he also considered and gave some weight to the evaluations conducted by Ippolito and Klementowski.  (Tr. 556-57).  Although he did not fully adopt the marked stress-related limitations identified by Ippolito or the marked social-interaction limitations identified by both Ippolito and Klementowski, he explicitly considered them and explained that his review of the overall record demonstrated that plaintiff suffered only moderate limitations in these areas.  (*Id.*).

In formulating the RFC, however, ALJ Bell gave plaintiff "the benefit of the doubt" by concluding that he was unable to interact with the public.  (*Id.*).

On this record, I find that ALJ Bell appropriately based his RFC determination on record evidence, including the several opinions in the record, and did not base the RFC upon his own lay interpretation of the medical evidence.  I also find, for the reasons stated above, that the ALJ's RFC determination is otherwise supported by substantial evidence.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole").  Thus, remand is not warranted on this basis.

In sum, the crux of plaintiff's challenge to ALJ Bell's determination is that he failed to comply with the District Court Decision.  Plaintiff appears to interpret that decision as a directive to the ALJ to accord specific weights to certain medical opinions or to preclude him from considering certain evidence.  The District Court Decision did not order calculation of benefits and did not direct that particular weight be assigned to any opinions, nor did it preclude consideration of any evidence.  Rather, it directed the ALJ to apply the correct legal standards, to correct any misinterpretations of the record evidence, and to sufficiently explain his reasoning in order to permit meaningful review of his determination.  I find ALJ Bell has done that.

Although plaintiff may disagree with ALJ Bell's consideration of the conflicting evidence in the record, "under the substantial evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support [his] position." *Warren v. Comm'r of Soc. Sec.*, 2016 WL 7223338, *6 (N.D.N.Y.), *report and recommendation adopted by*, 2016 WL 7238947 (N.D.N.Y. 2016).

Rather, he "must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Id.*; *see also Avant v. Colvin*, 2016 WL 5799080, *3 (W.D.N.Y. 2016) ("[a]ll of [p]laintiff's arguments focus on the substantiality of the evidence supporting the ALJ's decision[;] [h]owever, as the Second Circuit has explained, 'whether there is substantial evidence supporting the claimant's views is not the question . . . , rather, the [c]ourt must decide whether substantial evidence supports the ALJ's decision'") (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (brackets omitted)). ALJ Bell's decision in this case demonstrates that he weighed the record evidence, including the conflicting evidence; no basis exists for this Court to overturn the ALJ's assessment of the evidence or his resolution of the conflicts in it. *See Casey v. Comm'r of Soc. Sec.*, 2015 WL 5512602, *9 (N.D.N.Y. 2015) ("[i]t is the province of the [ALJ] to consider and resolve conflicts in the evidence as long as the decision rests upon adequate findings supported by evidence having rational probative force[;] . . . [the ALJ] properly considered the totality of the record evidence, and concluded that the evidence quoted above outweighed [plaintiff's] evidence to the contrary") (internal quotation omitted).

## CONCLUSION

After careful review of the entire record, this Court finds that the Commissioner's denial of DIB was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 14)** is **GRANTED**. Plaintiff's motion for

21

judgment on the pleadings **(Docket # 11)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**


                                                    *s/Marian W. Payson*
                                                 MARIAN W. PAYSON
                                               United States Magistrate Judge


Dated:  Rochester, New York
        September 27, 2021